**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. 13-7082-MJ |
| Plaintiff, | **ORDER** |
| vs. | |
| Janice Lorraine Snyder, a.k.a. Janice Lorraine Figner, | |
| Defendant. | |

This matter is before the Court on Defendant Snyder's request for release during the pending extradition proceedings. (Doc. 10 and 16.) The Court held a detention hearing on March 27, 2013 and took this matter under advisement. (Doc. 17). As set forth below, the Court denies Defendant's request and orders that she be detained until the conclusion of this extradition proceeding.

**I.     Procedural Background**

On March 13, 2013, the government filed a Complaint for Extradition in this Court asserting that Defendant has been charged by Information in the Province of British Columbia, Canada with tax fraud in violation of paragraph 327(1)(a) of the Excise Tax Act (Count 1); paragraph 327(d)(1) of the Excise Tax Act (Counts 2 and 3); paragraph 239(1)(d) of the Income Tax Act (Count 4); and paragraph 327(1)(c) of the Excise Tax Act (Count 5), and requesting that the Court issue a warrant for Defendant's arrest. (Doc. 1.) The Court

issued an arrest warrant and Defendant was subsequently apprehended and brought before the Court. (Doc. 2, 14 and 12.)

The Complaint for Extradition was accompanied by a copy of the December 3, 1973 "Treaty Between the United States and Canada," including the 1988 Protocol Amending the Extradition Treaty with Canada. (Doc. 1, Ex. 2.) Article 2 of the Extradition Treaty, as replaced by Article I of the 1988 Protocol, provides that extradition shall be granted for conduct that constitutes an offense punishable by the laws of both Canada and the United States by imprisonment, or other form of detention, for a term exceeding one year or any greater period of punishment. (Doc. 1.)

In a five-count Information, the Province of British Columbia alleged that Defendant committed crimes between December 31, 2005 and June 16, 2010. (Doc. 1, Ex. 1 at 14-15.) In summary, count one of the Information alleges that Defendant, as a contractor for Dominican Refunds, Inc., a corporation based in Vancouver and doing business as Taxback Services, Inc., made false or deceptive statements on 271 Visitor Rebate Claims, by claiming Visitor Rebates of $413,834.32, in violation of paragraph 327(1)(a) of the Excise Tax Act. (*Id.*) Count two alleges that Defendant wilfully obtained or attempted to obtain refunds of $127,697.60 pertaining to Visitor Rebates to which she was not entitled, in violation of paragraph 327(1)(d) of the Excise Tax Act. (*Id.*) Count three alleges that Defendant wilfully obtained or attempted to obtain refunds of $286.136.72 pertaining to Visitor Rebates to which she was not entitled, in violation of paragraph 327(1)(d) of the Excise Tax Act. (*Id.*)

Count four alleges that Defendant wilfully evaded or attempted to evade payment of taxes imposed by the Income Tax Act by failing to report her taxable income of $232,160.68 for the tax years 2006, 2007, 2008 and 2009, and thereby evaded the payment of taxes of $37,067.28, in violation of paragraph 239(1)(d) of the Income Tax Act. (*Id.*) Count five alleges that defendant evaded or attempted to evade remittance of taxes imposed by the Excise Tax Act for the annual periods from April 11, 2006 to March 27, 2009, by failing to report the Goods and Services Tax collectible income from Dominion Refunds, Inc., a

1  corporation based in Vancouver, British Columbia and doing business as Taxback Services,
2  Inc., in violation of paragraph 327(1)(c) of the Excise Tax Act.  (*Id.*)

3  The penalty for violating paragraphs 327(1)(a), (c) and (d) of the Excise Tax Act, as
4  alleged in counts 1, 2, 3 and 5, is imprisonment for up to two years and a fine between 50%
5  and 200% of the tax sought to be evaded or of the rebate or refund sought.  (Doc. 1, Ex. 1 at
6  8.)  The penalty for violating paragraph 239(1)(d) of the Income Tax Act, as alleged in count
7  4, is imprisonment for up to two years and a fine between 50% and 200% of the tax sought
8  to be evaded.  (*Id.* at 9-10.)  Defendant was charged with these offenses on August 12, 2011.
9  (*Id.* at 15.)  The Provincial Court of Canada, in the Province of British Columbia, issued a
10 warrant for Defendant's arrest on September 1, 2011.  (*Id.* at 17-18.)

11 **II.     Standards for Release During Extradition Proceedings**

12 The federal statute implementing the United States' extradition treaties with other
13 nations, 18 U.S.C. §§ 3184 - 3196, does not provide for bail.  An international extradition
14 proceeding is not considered a criminal case and therefore the Bail Reform Act, 18
15 U.S.C. § 3141 - 3156, does not apply.  *Kamrin v. United States*, 725 F.2d 1225, 1228 (9th
16 Cir. 1984).  Similarly, neither the Federal Rules of Criminal Procedure nor the Federal Rules
17 of Evidence apply to international extradition proceedings.  *See* Fed. R. Crim. P. 1(a)(5)(A);
18 Fed. R. Evid. 1101(d)(3).

19 In foreign extradition cases, there is a well-established presumption against bail based
20 on the foreign relations interests of the United States in successfully returning persons
21 subject to criminal prosecution to the requesting country.  *Wright v. Henkel*, 190 U.S. 40, 63
22 (1903) (bail "should not ordinarily be granted in cases of foreign extradition").  Although it
23 is "unusual and extraordinary" for the court to grant bail in an international extradition case,
24 it is not impossible to obtain bail.  *In the Matter of the Extradition of Nacif-Borge*, 829
25 F. Supp. 1210, 1213 (D. Nev. 1993).  Rather, bail may be granted in an extradition
26 proceeding upon a showing of "special circumstances."  *Wright*, 190 U.S. at 62-63; *see also*
27 *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989); *United States v. Williams*, 611

28

- 3 -

F.2d 914, 015 (1st Cir. 1979). Courts have not precisely defined "special circumstances." *Nacif-Borge*, 829 F. Supp. at 1214. But special circumstances have been found "only in the most pressing circumstances and when the requirements of justice are absolutely peremptory." *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (per curiam).

While there is general agreement among the courts that special circumstances must exist to release a person facing extradition, courts disagree regarding "whether absence of a flight risk is a primary special circumstance." *See United States v. Taitz*, 130 F.R.D. 442, 444 (S.D. Cal. 1990). In the Ninth Circuit, "absence of a flight risk is not the criteria for release." *Id.* (citing *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989)). "Rather, special circumstances must exist *in addition to* absence of the risk of flight." *Taitz*, 130 F.R.D. at 444 (emphasis added).

When considering whether to release a person facing an extradition hearing, the court "first ascertains whether there is a flight risk. If no such risk exists, the court then determines whether any special circumstances exist." *Id*. at 445 (citing *Salerno*, 878 F.2d 317). A person facing international extradition, such as Defendant in this case, "may overcome the presumption against bail by presenting clear and convincing evidence demonstrating 'special circumstances' justifying release pending extradition proceedings and that the person will not flee or pose a danger to any other person in the community." *Nacif-Borge*, 829 F. Supp. at 1215. "Special circumstances can arise under various conditions, and the determination of when such conditions exist is left to the sound discretion of federal trial judges." *In re Extradition of Gonzalez*, 52 F.2d 725, 736 (W.D. La. 1999) (citing *Beaulieu v. Hartigan*, 554 F.2d 1 (1st Cir. 1977)).

**III.  Defendant's Request for Release**

In her Memorandum of Law Regarding Relator's Release Pending Extradition Proceedings (Doc. 16), and at the detention hearing, Defendant argued that the following circumstances support her release during the pendency of this extradition proceeding: (1) the alleged offenses are non-violent; (2) bail would be available in the United States for the

- 4 -

charged offenses; (3) bail would be available in Canada for those subject to extradition to the United States; (4) the alleged offense conduct occurred in the United States; (5) the existence of "family circumstances"; and (6) that she has health concerns.

### A. Flight Risk and Danger to the Community

Although the parties' briefing does not discuss whether Defendant presents a flight risk or is a danger to the community, the parties addressed these issues during the detention hearing. The government argued that Defendant is a flight risk based on her Canadian citizenship and her status as a fugitive. The government also argued that Defendant fled to the United States after allegedly defrauding the Canadian government and that she has a strong incentive to flee considering the strength of the government's case. The government did not argue that Defendant is a danger to the community.

Defendant argued that she is not a flight risk or a danger to the community. Defendant further argued that she has strong ties to the community including being married to a United States citizen, owning a home, and caring for her eleven-year-old step daughter. When asked if Defendant was aware of the charges filed against her in Canada in March 2012, approximately a year before her arrest in Arizona, defense counsel stated that Defendant "knew of the possibility" of the tax fraud charges "for some time," yet continued to live openly in the United States. Defendant also asserted that family members were willing to post a cash bond for her release.

The Court finds that based upon the nature of the charges and Defendant's status as a non-citizen, Defendant poses a risk of flight, but that she is not a danger to the community. If this were a case in which the Bail Reform Act applied, the Court would likely find that there are conditions that could address the risk of flight and reasonably assure Defendant's appearance at future proceedings. Nonetheless, even if the Defendant is not considered a flight risk, the Court must consider whether Defendant has established the existence of special circumstances.

### B. Special Circumstances

Courts have found that circumstances such as the need to consult with counsel, the absence of a flight risk, defendant's good character, and the likelihood of success in the extradition proceedings did not rise to the level of "special circumstances" supporting release in extradition proceedings. *See In the Matter of Extradition of Russell*, 805 F.2d 1215, 1217 (5th Cir. 1986) (the need to consult with counsel concerning pending civil litigation or extradition proceedings was not a special circumstance); *In the Matter of the Extradition of Sidali*, 868 F. Supp. 656, 658-59 (D. N.J. 1994) (a high probability of success in the extradition proceeding and the defendant's extraordinary character were not special circumstances); *United States v. Hill*, 765 F. Supp. 381, 386-88 (E.D. Mich. 1991) (the absence of a flight risk, involvement in pending civil litigation regarding child custody, and the need to consult with counsel were not special circumstances).

Other courts, however, have found "special circumstances" supporting release in extradition cases based upon the suitability of the available detention facilities, the location of the alleged criminal conduct, whether bail was available for the offense in the country seeking extradition, the complexity and number of the charges, and delays in the proceedings. *See Hu Yau-Leung v. Soscia*, 649 F.2d 914, 920 (C.A.N.Y. 1981) (lack of suitable detention facility for sixteen-year-old defendant was a special circumstance); *In the Matter of the Extradition of Muhamed Sacirbegovic*, 2004 WL 1490219, *2-3 (S.D.N.Y. Jul. 6, 2004) (court found special circumstances when defendant was an American citizen, the crime for which extradition was sought occurred principally in the United States, defendant would be eligible for bail had he been charged with embezzlement in the United States, and a letter from a government official with the country seeking extradition indicated that it did not oppose bail); *In the Matter of the Extradition of Kamel Nacif-Borge*, 829 F. Supp. 1210, 1221 (D. Nev. 1993) (court found special circumstances when Mexican law allowed release on bail on the substantive offense if the defendant posted security in the amount of eighty percent of the tax debt, and the defendant posted a twelve million dollar bond); *United States v. Taitz*,

130 F.R.D. 442, 445- 447 (S.D. Cal. 1990) (court found special circumstances in a complex case with 434 counts of fraud and substantial questions regarding whether charged conduct was an extraditable offense under the applicable treaty, when there would be a delay of at least six months before extradition hearing could be held, defendant had no prior criminal record and was not charged with a violent crime, defendant was allergic to commonly served food and commonly used laundry detergent at the correctional center, the correctional center lacked facilities and materials for defendant to practice his religion, and the law of the country of extradition permitted bail for persons facing extradition on similar charges); *In re Gannon*, 27 F.2d 362 (E.D. Pa. 1928) (the court found special circumstances when defendant was a good bail risk and the extradition hearing could not take place for at least two months). Having considered these decisions, the Court will address whether Defendant has established special circumstances that would support her release.

### 1. Nature of the Charged Offense

Defendant has been charged with five counts of tax fraud in Canada. There are no allegations of continuing criminal conduct. Relying on *Taitz*, Defendant argues that the non-violent nature of the charges is a special circumstance that supports her release. In *Taitz*, the court noted that the defendant had no prior record and was not charged with a crime of violence. *Taitz*, 130 F.R.D. at 446. Here, as in *Taitz*, Defendant is charged with a non-violent offense and the presentence report indicates that she has no criminal history.[1]

However, the court's decision to release the defendant in *Taitz* was based on several factors that are not present here, including: (1) the complexity of the case, which involved 434 counts of fraud and substantial questions as to whether the offenses were extraditable under the governing treating, (2) the delay of the extradition hearing, which would likely not take place for at least six months, (3) the defendant was allergic to the common substances in the

---

[1] Information contained in pretrial services reports may be used for purposes of bail determinations. The reports are provided to the attorneys for the government and the accused, but are otherwise confidential. 18 U.S.C. § 3153(c)(1).

- 7 -

1  food and to the laundry soap used in the correctional institution, (4) the correctional center
2  lacked facilities and materials for defendant to practice his religion and (5) there was no
3  diplomatic necessity to deny bail because under South African law, fraud is a bailable offense
4  and defendant produced evidence that a South African court had released on bail a defendant
5  facing extradition to the United States on similar charges. *Id.* at 445-47. Therefore, the
6  decision in *Taitz* is distinguishable and does not support Defendant's argument that the nature
7  of her offense and her lack of a criminal history are special circumstances that support her
8  release.

9  Additionally, it has been noted that "approximately one-third of extradition cases in
10 the United States concern financial fraud." *Nacif-Borge*, 829 F. Supp. at 1220 (citing Roger
11 M. Olsen, Deputy Assistant Attorney General, Reform of the Extradition Laws of the United
12 States: Hearings on H.R. 2643 Before the Sub-Committee on Crime, 98th Cong., 1st Sess. 34
13 (1983)). Thus, the nature of Defendant's charged offenses does not make this a case
14 involving "special circumstances." *See Nacif-Borge*, 829 F. Supp. at 1220 (nature of charged
15 tax evasion offenses did not make the case special and the "court [could] envision no situation
16 in which the underlying offense itself would justify release on bail"). Accordingly, the non-
17 violent nature of the charges does not establish special circumstances.

18              **2. Availability of Bail in the United States for the Charged Offense**

19 Defendant next argues that special circumstances exist because her alleged offenses
20 involve tax fraud, a crime for which bail would be available in the United States pursuant to
21 18 U.S.C. § 3142. (Doc. 16 at 5.) Defendant relies upon *Sacribegovic*, 2004 WL 1490219,
22 at *3, in which the court found that eligibility for bail on similar charges in the United States
23 was one of four factors establishing special circumstances. In that case, the defendant was
24 an American citizen, the crime occurred "principally — if not exclusively — in the United
25 States," it was clear the defendant would be eligible for bail if he had been charged with
26 embezzlement in the United States, and a government official from the country seeking
27 extradition had written a letter opining that the United States should grant bail. *Id.* at *1-3.
28

- 8 -

The court, however, emphasized that its decision to grant bail was limited to the "unprecedented" facts of that case and it did explain the significance it assigned to any one factor. *Id.* at *3. Therefore, the decision in *Sacribegovic* does not support a finding of "special circumstances" in this case based on the availability of bail for similar offenses in the United States. In addition, because the Bail Reform Act does not apply in extradition proceedings, the availability of bail for a similar offense in the United States has limited significance. Thus, the Court finds that the availability of bail in the United States for the same or a similar offense does not constitute a special circumstances warranting release on bail in this case.

Defendant also cites *In re Gannon*, 27 F.2d at 362, to support her argument of "special circumstances" based on the availability of bail in the United States for similar offenses. There, the court noted that the charged offense, obtaining money under false pretenses, was a bailable offense in the United States and under the laws of the country where the offense was alleged to have been committed. However, in granting release on bail, the court emphasized that the extradition hearing could not be held for at least two months and stated that "against the small risk of default there is the injustice of imposing imprisonment in advance of a hearing which must be delayed for some time." *Id.* at 364. Unlike *Gannon*, in this case the government seeks to expedite the extradition proceeding and requested a hearing date within two or three weeks. Defendant requested three to four weeks to prepare for the hearing. The extradition hearing is scheduled less than a month from now on April 26, 2013. (Doc. 17.)

### 3. Availability of Bail in Canada

Defendant also argues that the possibility that a person facing extradition from Canada to the United States could be released on bail is another "special circumstance" supporting her release. The presumption against bail in extradition cases is a matter of diplomacy arising out of the United States' obligations under its extradition treaties with other nations to deliver an accused to the country requesting extradition. *See Wright*, 190 U.S. at 62. Thus, Defendant

- 9 -

is apparently arguing that if Canada would release a person subject to extradition to the United States, those diplomatic concerns do not apply or are lessened.[2]

Defendant argues that the decision in *United States v. Vreeken*, 603 F. Supp. 715 (D. Utah 1984), indicates "that the admission to bail is a possibility for those facing extradition from Canada to the United States." (Doc. 16 at 5.) In *Vreeken*, the defendant was indicted in the United States on several counts of wire fraud and was arrested in Canada. *Id*. at 716. After his arrest, the defendant sought to be released on bail pending the extradition proceeding. *Id*. Pursuant to the Canadian Extradition Act, a Canadian judge "heard evidence on the issue of bail and denied Vreeken's request." *Id*. The *Vreeken* decision does not support Defendant's argument. In that case, the Canadian court denied bail on charges similar to those at issue here and thus, even if bail was possible, it was not granted. Defendant has not provided any evidence of a Canadian court granting release on bail to a United States citizen facing extradition on charges similar to those at issue here. Thus, the "diplomatic necessity" for denying bails exists in this case.

### 4. Location of the Offense Conduct

Defendant next argues that release on bail is appropriate because the alleged offense conduct occurred in the United States. Although the location of the alleged offense conduct, and whether it "occurred principally — if not exclusively — in the United States" could be considered a factor in finding special circumstances, *see Sacirbegovic*, 2004 WL 1490291, at *3, Defendant has not met her burden of establishing a special circumstance based on this factor.

---

[2] For example, in *Taitz*, the court found that "the diplomatic necessity for denying bail" was not present when the country seeking extradition, South Africa, had granted bail to a defendant who was facing extradition to the United States on charges that were similar to the charges at issue before the court in the extradition hearing. *Taitz*, 130 F.R.D. at 447. This finding of a lack of diplomatic necessity, however, was only one of several circumstances the court considered in finding special circumstances.

- 10 -

Defendant asserts that she was living in Phoenix, Arizona by April 2008 and that the conduct underlying counts one, two, and three of the Information occurred after May 2008. (Detention hearing Exs. 101, 103.)  The government disputes that the offense conduct occurred primarily in the United States and argues that at least some portion of the offense conduct occurred while Defendant was living in Canada.

Although counts one, two, and three are based on conduct that allegedly took place while Defendant was residing in the United States, (*see* Doc. 1, Exs. 101 and 103, and pretrial services report), counts four and five are based on conduct that allegedly began on December 31, 2005, when Defendant resided in Canada. (Doc. 1, Ex. 1 at 14-15.)  Additionally, the Complaint includes allegations suggesting that Defendant laid the groundwork for the allegedly fraudulent activity starting in 2003 when she was living in Canada, and that she frequently traveled between the United States and Canada even after she moved to the United States. (Doc. 1 at 2-6.)

Thus, the Court cannot conclude that the offense conduct "principally — if not exclusively — occurred in the United States" such that it should considered a special circumstance. *Cf. Sacribegovic*, 2004 WL 1490219, at *3 (noting that the defendant was an American citizen and that the conduct underlying the charges of embezzlement "occurred principally — if not exclusively — in the United States").

### 5. Family Circumstances

Although Defendant acknowledges that family circumstances do not usually constitute "special circumstances" supporting release, she argues that her family circumstances should be considered "special circumstances."  At the detention hearing, Defendant argued that she resides with her husband and cares for her eleven-year-old step daughter.  The pretrial services report reflects that Defendant's step daughter lives with her and her husband every other weekend.  The record before the Court does not indicate that the care Defendant provides is anything other than ordinary child care, a factor that would likely be present in

many cases. The Court finds that Defendant's family circumstances are not a "special circumstance" that support her release.

The cases Defendant cites do not compel a different conclusion. *In the Matter of the Extradition of Molnar*, 182 F. Supp. 2d 684 (N.D. Ill. 2005), the court applied a "more liberal approach" to the bail determination because the defendant was arrested under a provisional warrant. *Id.* at 689. The court considered that the defendant provided financial assistance to his seriously ill mother who resided in Hungary and depended on the money he sent her, as one of six factors that presented a "weak case" of special circumstances. These circumstances are very different from the child care concerns Defendant has argued here. In addition, there were other factors considered in *Molnar* that are not present here. *See id.* at 689 (noting that the defendant's arrest was provisional, he had never been a fugitive, the possible delay inherent in the provisional arrest situation, and the criminal charges were initially dropped and only reinstated after he had left Hungary, which suggested the charges were weak).

In *United States v. Ramnath*, 533 F. Supp. 2d 662 (E.D. Texas 2008), the court considered several factors in finding special circumstances, including that the defendant was a doctor who cared for critically ill patients and that she had established a likelihood of success in defending the charges in the requesting country. *Id.* at 682-685. After discussing those factors, the court noted that the defendant's husband and minor children needed her. *Id.* at 685. The court's previous detailed discussion of the factors supporting the defendant's release did not include the defendant's family circumstances and, thus, it appears that these circumstances were of lesser importance to the court's decision.

### 6. Health Issues

Finally, Defendant states that she has a history of ovarian cancer that has been in remission since 2007. She reported to the pretrial services office that she started vomiting blood six months ago, but did not seek treatment because she does not have health insurance. At the detention hearing, she reported that her condition has worsened during her recent detention.

1  Defendant's health issues do no not constitute a special circumstance. Defendant
2  stated that her need for treatment is "paramount," but she has not sought and is not currently
3  receiving treatment. Although medical issues could qualify as special circumstances,
4  Defendant has failed to prove a serious deterioration of health in this case. *See Salerno*, 878
5  F.2d at 317 (noting that a "serious deterioration of health while incarcerated" could be a
6  special circumstance). Defendant's health condition is concerning, but it is not a special
7  circumstance that supports her release.

8  Furthermore, Defendant could obtain treatment for her health condition while
9  incarcerated. *See Nacif-Borge*, 829 F. Supp. at 1216-17 (defendant who needed a special diet
10 and daily exercise because he had one kidney, and who had suffered weight loss and
11 "discomfort" while incarcerated, did not establish special circumstances because he could
12 obtain treatment while incarcerated). Defendant has not presented any evidence regarding the
13 type of medical treatment she requires or indicating that no acceptable treatment would be
14 available to her while she is incarcerated. *See United States v. Kidder*, 869 F.2d 1328, 1330-
15 31 (9th Cir. 1989) (to avoid imprisonment defendant "must show that no constitutionally
16 acceptable medical treatment can be provided while he is imprisoned"); *but see Taitz*, 130
17 F.R.D. at 446 (the court considered defendant's allergic reactions to corn and corn sweeteners
18 used in the food at the correctional center, and allergic reaction to the laundry detergent used
19 to wash the inmates' clothes as health factors that supported its finding of special
20 circumstances).

21 **IV.   Conclusion**

22 After considering the parties' memoranda of law regarding release in extradition
23 proceedings (Doc. 7 and 16), and counsels' arguments during the detention hearing and the
24 admitted exhibits, the Court finds that Defendant has failed to establish special circumstances
25 to warrant bail or release in the pending extradition proceedings.

26 / / /

27 / / /

28
- 13 -

Accordingly,

Defendant is ordered detained pending further proceedings. This ruling is without prejudice for Defendant to renew her request for release at the conclusion of the extradition hearing.

DATED this 3rd day of April, 2013.

*Bridget S. Bade*
Bridget S. Bade
United States Magistrate Judge

- 14 -